IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| KIMBRELYN CHATMAN, on behalf of herself and others similarly situated, | ) ) ) | Civil Action No. 3:14-cv-00526-CMC |
| Plaintiff, | ) ) | ORDER DENYING |
| | ) | RENEWED MOTION FOR |
| v. | ) ) | CLASS CERTIFICATION |
| GC SERVICES, LP | ) ) | |
| Defendant. | ) ) ) | |

Through this action, Plaintiff, Kimbrelyn Chatman ("Chatman"), seeks recovery on behalf of herself and others similarly situated for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Specifically, Chatman alleges that Defendant, GC Services, LP ("GC"), violated the FDCPA by leaving two very similar voice messages on her cellular telephone, neither of which made certain disclosures required by the FDCPA.

The matter is now before the court for ruling on Chatman's Renewed Motion for Class Certification. Renewed Motion, ECF No. 39 (incorporating opening argument in motion). Through her Supplemental Brief in Support of this motion, Chatman seeks certification of a plaintiff class defined as follows:

> All persons (1) for whom GC's records reflect a South Carolina address, or an 803, 843, or 864 area code, (2) and for whom GC left, or caused to be left, a voice message, in connection with the collection of a consumer debt, between February 27, 2013 to February 26, 2014, that failed to state GC's name, and/or failed to state the nature of GC's business, and/or failed to disclose that GC is a debt collector, and/or failed to disclose that the purpose of GC's call was to collect a debt.

Plaintiff's Supplemental Brief in Support of Class Certification ("Pl. Supp. Br.") at 2, ECF No. 58.

In the alternative, Chatman seeks certification of a class defined in the same manner except for an

added limitation that the class consist of persons "for whom GC's records are searchable by address, area code, and notes[.]" *Id.* at 5.

GC opposes certification of a class under either definition. GC argues that Chatman has failed to establish that, under either definition, her proposed class is reasonably ascertainable or that it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the court agrees with GC in both respects. Chatman's motion for class certification is, therefore, denied.

## BACKGROUND

Chatman filed her Complaint and her initial motion for class certification on February 26, 2014. ECF Nos. 1, 5. She immediately sought and was granted a stay of briefing on the motion for class certification. ECF Nos. 6, 7. On August 15, 2014, after resolution of other motions, including a motion to dismiss for lack of subject matter jurisdiction, and a period for discovery, Chatman filed her Renewed Motion for Class Certification. ECF No. 39. On September 5, 2014, Chatman filed a motion for partial summary judgment on liability. ECF No. 43. Both motions were fully briefed by late September 2014.

The court addressed Chatman's motion for partial summary judgment first, ruling in Chatman's favor on liability. Summary Judgment Order, ECF No. 57 (entered November 6, 2014). In granting summary judgment, the court held that the uncontroverted evidence, including Chatman's declaration, established that Chatman's debt was a "consumer debt" as that term is defined in the FDCPA. *Id.* at 6, n. 7 (finding Chatman's declaration cured any evidentiary deficiencies as to the nature of the debt); *id.* at 7 (finding evidence "uncontroverted that [Chatman] was the object of collection activity by GC and that the debt at issue was a consumer debt") . The court further held that GC left two messages on Chatman's cellular telephone that failed to include disclosures required

2

by the FDCPA. *Id.* at 6, n. 7 (relying on Chatman's declaration to cure any evidentiary deficiencies as to content of messages); *id.* at 8-9 (stating that "[n]either message disclosed that the call was made by or on behalf of GC, that GC was a debt collector, or that the call was for the purpose of collecting a debt. Thus, based on Plaintiff's uncontroverted description of the messages, it appears at first blush that both messages violated the plain language of Sections 1692d(6) and 1692e(11)."). The court rejected GC's legal argument that the messages fell outside the scope of the FDCPA's disclosure requirements because they were not communications and, consequently, ruled in Chatman's favor on liability under both Sections 1692e(11) and 1692d(6). *Id.* at 10-14 (rejecting argument that messages were not communications under the FDCPA and, consequently, finding "Chatman is entitled to summary judgment on liability on her claim for violation of 15 U.S.C. § 1692e(11), because the messages did not indicate that the caller was a debt collector."); *id.* at 16 (finding Chatman entitled to summary judgment "that GC's messages violated 15 U.S.C. § 1692d(6) because the messages failed to include 'meaningful disclosure of the caller's identity.'").[1]

In light of the grant of partial summary judgment and Chatman's argument that modification of the class definition might resolve at least some of GC's grounds for opposing class certification, the court deferred ruling on Chatman's Renewed Motion for Class Certification. The court, instead, (1) requested supplemental briefing on the impact of the summary judgment ruling on class certification, (2) allowed Chatman to amend her proposed class definition, and (3) afforded the parties an extended period in which to confer and file supplemental memoranda. *Id.* at 16-17. The parties continued to confer on discovery issues during the extended briefing period but did not seek

---

[1] In addition to Chatman's declaration, the court relied on the following evidence in granting Chatman's motion for summary judgment: (1) deposition testimony of GC's corporate representatives; (2) documentary evidence regarding GC's procedures; and (3) GC's electronic records of calls made to Chatman by or on behalf of GC.

intervention by the court as to any discovery dispute. *See* ECF No. 58-1, 58-2, 58-3.

As requested by the Summary Judgment Order, Chatman filed a Supplemental Brief in Support of Class Certification on January 16, 2015. Through this brief, Chatman proposes the two alternative class definitions quoted above. Pl. Supp. Br., ECF No. 58. GC filed a responsive brief on February 2, 2015, continuing to oppose class certification on multiple grounds. Defendant's Supplemental Response ("Def. Supp. Resp."), ECF No. 60. Chatman also filed a notice of supplemental authority on March 13, 2015. ECF No. 62. The matter is now ripe for resolution.

## STANDARD

**General Requirements**. Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. To obtain certification under Rule 23, the proponent of the class must establish the four threshold requirements of Rule 23(a) as well as at least one of the bases for certification under Rule 23(b). *EQT Prods. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). The four Rule 23(a) requirements are "numerosity, commonality, typicality, and adequa[cy of] representation." *Id.* As to Rule 23(b), Chatman relies primarily on subpart (b)(3), which allows certification of a class where "the court finds that the questions of law or fact common to the class members predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pl. Suppl. Br. at 9 (quoting Fed. R. Civ. P. 23(b)(3)). Alternatively, she relies on Rule 23(b)(2) which allows certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* at 9-10 (quoting Fed. R. Civ. P. 23(b)(2)).

**Burden of Proof.** The burden of establishing each of the requirements for certification rests on the proponent of class certification, here Chatman, who "must present evidence that the putative

4

class complies with Rule 23." *EQT Prods.*, 764 F.3d at 358.  Merely pleading the requirements is insufficient and the court should "probe behind the pleadings before coming to rest on the certification question." *Id.* (quoting *Comcast Corp v. Behrend*, 569 U.S. __, 133 S. Ct. 1426, 1432 (2013)).  As recognized in *EQT Productions*, the court has an independent obligation to perform a rigorous analysis to ensure each of the prerequisites for class certification are satisfied.  *Id.* at 358 (citing *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 2551 (2011)); *id.* at 361 (finding certification decision was premature because court had not "definitively determine[d] that the requirements of Rule 23 ha[d] been satisfied," which is required "even if that determination requires the court to resolve an important merits issue"); *see also Soutter v. Equifax Info. Servs., LLC*, 498 Fed. App'x. 260 (4th Cir. 2012) (reversing class certification decision because, had district court "performed the rigorous analysis [*Wal-Mart v. Dukes*] requires, it would have concluded a 'substantial gap' exists between Soutter's proof and that of class members[,]" thus precluding a finding of typicality)

**Threshold Requirement.**  The Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable.'"  *EQT Prods.*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053 (4th Cir. 1972)).  While the proponent of the class "need not be able to identify every class member at the time of certification," it must demonstrate that class membership may be determined by "reference to objective criteria" and "without extensive and individualized fact finding."  *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (relying on *Marcus* for dual propositions that "the class must be defined with reference to objective criteria" and "there must be a reliable and administratively

5

feasible mechanism for determining whether putative class members fall within the class definition.").

**DISCUSSION**

For reasons explained below, the court finds that Chatman has failed to establish that her proposed class is readily identifiable. As to her proposed primary definition, this is because Chatman fails to explain how individual membership in the class can be determined.[2] As to her proposed alternative definition, it is because she relies on assumptions and incomplete evidence as to the degree to which GC's records are searchable.

In addition, the court finds that Chatman has failed to establish at least two requirements of Rule 23(a) as to her proposed alternative definition (numerosity and typicality), and, likewise, fails to establish necessary requirements for certification of a class under Rule 23(b)(3). Finally, the court finds that certification under Rule 23(b)(2) is not appropriate for the claims at issue in this action.

**I.    READILY IDENTIFIABLE**

The class definitions proposed by Chatman in her Supplemental Brief resolve some concerns previously raised by GC. Most critically, by defining her class based on addresses and area codes contained in GC's records, Chatman eliminates concerns arising from reliance on class members' "location."[3]

---

[2] Chatman's proposed method for identifying class members depends on a requirement contained only in her alternative definition, that GC's records be searchable for address, area code, and notes. Pl. Supp. Br. at 5, ECF No. 58.

[3] Chatman previously sought certification of a class defined as follows:

All persons (1) *located in South Carolina*, (2) for whom GC Services, LP ("GC") left, or caused to be left, a voice message, (3) in connection with the collection of a consumer debt, (4) between February 26, 2013 and February 26, 2014, (5) that failed to state that the message was (I) from GC, and/or (ii) from a debt collector, and/or

For purposes of this order, the court assumes without deciding that addresses and area codes reflected in GC's records are appropriate "objective criteria" for identification of class members, satisfying the first requirement that the "class . . . be defined with reference to objective criteria." *See Hayes*, 725 F.3d at 355 (quoting *Marcus*). The court, therefore, turns to whether there is "a reliable and administratively feasible mechanism for determining whether putative class members" fall within the class definition. *Id.*

Chatman argues that each of the requirements for class membership under her newly proposed definition(s) may be determined from GC's records using the following three "straightforward" steps:

• First, identify the calls that GC placed to individuals for whom its records reflect a South Carolina address, or an 803, 843, or 864 area code. This–which sets forth the potential universe of class members– is something that GC can do. *See* ECF No. 39 at 8; ECF No. 49 at 6.

• Second, identify which of these calls resulted in a voice message. This is also something that GC can do. *See* ECF No. 39 at 9-10; ECF No. 49 at 6. In fact, GC concedes that for "certain clients, [it] can separately query for an address, area code, or certain 'coded notes' on the account." ECF No. 46 at 7. Of the utmost significance, GC makes clear that "[c]oded notes may include 'leave words,' which indicate whether a message was left, among other things." *Id*.

• Third, identify the number of these voice messages that lacked the disclosures required by the FDCPA. This, as well, is something that GC can do. *See* ECF No. 39 at 10-11; ECF No. 49 at 7-8. Noteworthy, that [GC's corporate representative, Paul] Grover submitted an affidavit suggesting that GC cannot

_____

(iii) that the purpose of the call was to collect a debt and/or (iv) that any information obtained would be used for debt collection purposes.

Amended Motion to Certify Class at 1, ECF No. 39 (emphasis added). In opposing this definition, GC argued that it would be difficult if not impossible to determine where individuals were located when they received the voice messages at issue in this action. This is because of the prevalent use of cellular telephones, which may have area codes bearing no relation to the actual location of the telephone. Def. Oppos. Br. at 2-3, 6-7, ECF No. 46.

7

> do this, after unambiguously testifying under oath that it can, carries little weight given this Court's finding that Mr. Grover's post deposition declaration is insufficient to modify his prior unequivocal testimony." ECF No. 57 at 15.

Pl. Supp. Br. at 2, ECF No. 58.

Chatman's argument that GC "can do" the tasks listed in each of these three steps rests on her assumption that GC can perform computer searches for the relevant information. It follows that this argument (the only argument that the class is "readily identifiable") relies on Chatman's *alternative* definition, with its added limitation that the class consist of persons "for whom GC's records are searchable by address, area code, and notes[.]" As Chatman offers no argument that her primary proposed class (which lacks the requirement that GC's records be searchable) is readily identifiable, the court finds she has failed to meet the threshold requirement as to that definition.

Chatman's proposed alternative definition also fails, despite the requirement that GC's records be searchable, because Chatman has failed to establish that GC's records can, in fact, be searched for each of the required criteria in a reliable and administratively feasible way. She does not, for example, identify which of GC's records are searchable for address, area code, and notes, or identify the "notes" for which GC might conduct searches. Neither does she proffer evidence as to whether GC may search multiple criteria in combination.

Chatman, instead, relies on testimony given in this case regarding GC's ability to search *some* of its electronic records for *some* of the information needed as well as brief excerpts from depositions taken in other cases. For example, in her Renewed Motion, Chatman relies on Grover's deposition testimony in this case regarding (1) GC's ability to search its *mainframe* computer for certain limited information regarding *active* accounts, (2) the more detailed information contained in GC's *separate* "STAR system," and (3) Grover's understanding that the STAR system is

searchable for "status" items such as whether a message was left but not as to the content of the message.  Renewed Motion at 8-9, ECF No. 39.[4]  Chatman also relies on deposition testimony Grover gave in two other cases for the propositions that if something is not noted in the Account Detail Listing, then it did not occur, as well as for what is meant by a "Foti disclaimer" and when such a disclaimer is given.  ECF No. 39 at 10-11 (quoting excerpts from depositions in *Nichols v. GC Servs., LP*, CV 08-1491-PHX-FJM (D. Ariz.) and *Guajardo v. GC Servs., LP*, 4:08-cv-119 (S.D. Texas)).[5]

In her reply in support of her Renewed Motion ("Pl. Reply"), Chatman characterizes Grover's testimony in this case as conceding that GC can search the STAR system for notations indicating when voice messages were left as a result of a call by an agent of GC.  Pl. Reply at 6, ECF No. 49

---

[4]  Chatman cites pages 11-13 of Grover's deposition for the proposition that "GC can determine which of [the thousands of telephone calls that GC's third-party debt collectors make each day] were directed to consumers with South Carolina addresses [or area codes]."  Renewed Motion at 8, ECF No. 39.  The cited testimony does not support so broad a proposition.  It, instead, supports the premise that GC can search its *mainframe computer* for addresses and area codes associated with active accounts, but not for inactive accounts or for a specific period of time (such as the period covered by the proposed class claims).  Grover dep at 11-13.  Other cited testimony indicates that collection activity, such as telephone calls, is maintained in a separate system referred to as the "STAR system."  *Id.* at 9 (citing Grover dep. at 31-32 (addressing information he understands to be contained in the STAR system, including information as to phone numbers, addresses and "all the collection activity").

[5]  Both depositions were taken in 2009, in actions unrelated to the present action.  The deposition excerpt from *Nichols* addresses whether GC received specific letters at issue in that case.  *See* ECF No. 39-6 at 6.  After Grover states that GC did not receive the two letters, counsel asks: "So your testimony is whatever isn't in the account detail listing did not occur?"  Grover responds "correct."  *Id.*  The deposition excerpt from *Guajardo* explains what Grover was told by GC's general office manager regarding what a "Foti disclaimer" is and when it is given.  *See* ECF No. 39-5 at 6.

(citing Grover deposition at 43-45, 82-83).[6]  Chatman also argues that the court should disregard later declarations by Grover and Craig Cappelle, Vice President of GC's Information Technology Department, regarding the STAR system's limited search capabilities as contrary to prior admissions by Grover.  Pl. Reply at 14-15; ECF No. 49.  This assertion rests largely on an affidavit Grover submitted in *Nichols v. GC Servs., LP*, in 2009, in which Grover relied on his "personal knowledge, based upon [his] experience with and knowledge of GC's systems and how it keeps its records."  Pl. Reply at 15 n. 8.

Chatman, alternatively, relies on deposition testimony of Bob Wilson, who testified that GC would likely have more than one thousand "recordings of voice messages that GC's employees left for consumers in connection with third-party debt collection effort[s]" during the period covered by Plaintiff's proposed class definition.  Pl. Reply at 8, ECF No. 49 (citing Wilson dep. at 40-42).[7]  Plaintiff's implicit argument is that the necessary information could be gleaned from a review of whatever recordings are available.

---

[6] In the cited testimony, Grover explains that certain abbreviated notes (*e.g.* LMA) in the STAR system's Account Detail Listing for Chatman's account indicate a message was left on an answering device or machine.  Grover dep. at 42-43.  Grover later responds to an inquiry with an imbedded assumption that certain notes in the STAR system are searchable, without denying the same.  Grover dep. at 82-83.  In context, the latter testimony appears to concede that the STAR system could be searched to determine whether a message was left as a result of a call but not for notes regarding whether disclosures such as the "mini-miranda" were provided.  *Id.*  Grover, nonetheless, deferred to Bob Wilson as the corporate representative able to explain the STAR system's specific capabilities.  Grover dep. at 21-22.

[7] The question at issue related to the number of recordings that GC might have retained for calls made during the period covered by the class definition.  Wilson dep. at 41, ECF No. 49-3 at 6.  It does not reflect any other limitation such as a limitation to calls to consumers with a connection to South Carolina (*e.g.*, "located in" South Carolina, a South Carolina resident, or a listed telephone number with a South Carolina area code).  Thus, it lacks relevant limitations.  More critically, Wilson stated that he did not know how many recordings might exist and would only be guessing. Wilson dep. at 42.  He further stated that he was not familiar enough with the processes to know what would have to be done to answer the question. *Id.*

10

In a more recent submission, Chatman argues that GC's previously expressed concerns regarding its inability to search all of its records is resolved by her alternative definition's limitation to "only class members for whom GC's records are searchable by address, area code, and notes." Pl. Supp. Br. at 5-6, ECF No. 58. She further asserts that GC's argument as to records not being searchable should be disregarded because a defendant's "inadequate record keeping is not grounds to defeat class certification." *Id.* at 6 (citing, *e.g.*, *Drossin v. Nat'l Action Fin. Servs., Inc.,* 255 F.R.D. 608,614 (S.D. Fla. 2009)).

In opposing Chatman's renewed motion, GC proffers the declaration of Craig Cappelle, its Senior Vice President of Information Technology Applications, to explain the extent to which GC's records are searchable. Cappelle Decl., ECF No. 46-5.[8] Cappelle explains that the STAR system is the primary database GC uses to track third-party collection efforts and that this system is "account-centric," meaning it focuses on inquiries into and for individual accounts. Cappelle Decl. ¶ 3. He further explains that the system "is not designed for system-wide data inquiries to identify numerous accounts that meet certain criteria," although it does have the capability *for certain clients but not for all*, to search for an account by address, area code, phone number, or certain coded notes *Id.* ¶¶ 3, 4. The system cannot search for free text notes for *any* clients, and this would include notations as to whether a "Foti" or "mini-miranda" disclosure was made. *Id.* ¶ 4.

GC also proffers a declaration by Grover, who states that "many of the questions in [his] deposition asked about areas which were outside [his] area of knowledge" and that he was "not qualified nor designated to provide" testimony on information technology issues. Grover Decl., ECF

---

[8] Counsel for Chatman was advised that Cappelle was the person who could respond to questions about software issues during Bob Wilson's July 2014 deposition. *See* Wilson dep. at 18, ECF No. 46-6. Despite this notice, she has not deposed Cappelle.

No. 46-4. He further states that his testimony as to some search capabilities was mistaken, followed by a statement of his current understanding based on information provided by others. *Id.*[9]

Collectively, the evidence on which Chatman relies suggests that there *may* be some administratively feasible mechanism through which individuals falling within the criteria of her alternative definition could be identified from GC's electronic records. It does not establish that an administratively feasible mechanism for ascertaining class members, in fact, exists. Thus, Chatman has done no more than suggest an area for further inquiry. This is not enough to satisfy Chatman's burden of demonstrating that class treatment is appropriate.[10]

The court rejects Chatman's argument that any deficiencies may be disregarded because of inadequate recordkeeping by GC. While a few district courts have accepted such an argument, the only circuit court decisions proffered reject it.[11] Such a position is, moreover, inconsistent with the

---

[9] To the extent Grover relies on information provided by others, his declaration is not based on first-hand knowledge and, consequently, is not considered here. The same information is, however, provided in Cappelle's declaration based on Cappelle's first-hand knowledge.

[10] The court reaches this conclusion even if it disregards Grover's and Cappelle's most recent declarations. This is because Chatman has not presented sufficient detail as to which of GC's electronic records are searchable or the manner in which they might be searched. While not dependent on Cappelle's declaration, the court finds his declaration bolsters the conclusion that a class is not readily identifiable. In this regard, the court finds Cappelle's declaration is neither contradicted nor precluded by Grover's deposition testimony in this case or deposition testimony and declarations in other actions. Assuming they were otherwise admissible, Grover's testimony and declarations in other cases would be subject to explanation given the different cases, context, reliance on statements of others, and age of the deposition or declaration. Grover's prior statements do not, in any event, preclude GC from proffering clarifying declarations or affidavits in this action because, taken in context, Grover's testimony and declarations in other cases are not unequivocal testimony contradicting his testimony and declarations in this case. Neither does Grover's deposition testimony in this case meet this standard with respect to Cappelle's subsequently-filed declaration.

[11] Chatman argues that the court may rely on deficiencies in GC's recordkeeping in certifying the class. Pl. Supp. Br. at 6-7 (citing *Drossin*, 255 F.R.D. at 614 and *Smith v. Greystone Alliance, LLC,* No. 09C5585, 2010 WL 2680147 at *3 (N.D. Ill. June 30, 2010) as holding a defendant's inadequate recordkeeping is not grounds for denying class certification). GC, in contrast, argues that

Fourth Circuit's clear mandate that the court conduct a rigorous analysis to ensure all requirements for class certification are satisfied *before* a decision is rendered. *EQT Prods.*, 764 F.3d at 358-59 (finding district court "largely glossed over" a problem with identification). Chatman's theory ignores this mandate because it seeks class certification based on the absence of information necessary to make the required determinations.

Even if Chatman's fault-based argument for a relaxed approach were permissible in an appropriate case, the court would not find it warranted here. This is because she has not shown that GC was required but failed to keep records in any particular manner. Neither has she shown that she has exhausted other means of establishing a readily identifiable class.

In sum, the court finds that Chatman has not established that there is a reliable and administratively feasible mechanism for determining whether putative class members fall within either her primary or alternative proposed class definitions. As to the primary definition, this is because Chatman fails to suggest any mechanism for identifying persons falling within this definition. As to the alternative definition, it is because she proffers only the most general evidence regarding a mechanism that *might* allow for identification of persons falling within her alternative proposed definition. Chatman's obligation to demonstrate that the class is readily identifiable is not excused by any deficiency in GC's recordkeeping and she has not, in any event, demonstrated such a deficiency.

---

any alleged deficiency in its recordkeeping is irrelevant. Def. Supp. Resp. at 4-5 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013) (noting that "the nature and thoroughness of a defendant's recordkeeping dos not alter the plaintiff's burden to fulfill Rule 23's requirements" and holding plaintiff had not met burden on present record) and *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (noting that "[s]ome courts have held that where nothing in a company database shows or could show whether individuals should be included in the proposed class, the class definition fails" and holding that plaintiff had not met burden on present record)).

## II.    RULE 23(a) CRITERIA

Rule 23(a) requires Chatman to establish four factors: "numerosity, commonality, typicality, and adequa[cy of] representation." Chatman's proffer as to at least two of these criteria, numerosity and typicality, is deficient for reasons that overlap with the concerns addressed above.

**Numerosity.** Chatman does not address Rule 23(a)'s numerosity requirement in her Supplemental Brief, presumably relying on her earlier memoranda despite substantially modifying her class definition. This is particularly critical under her alternative definition which narrows the class to persons for whom GC's records are searchable. *See* Pl. Supp. Br. at 6 n.3, ECF No. 58 (arguing that "GC concedes that it can identify class members 'for some clients,' just 'not all clients.' . . . [a]nd, by definition, Ms. Chatman's alternative modified class would include only individuals with[in] those 'some clients.'").

Beyond an inference that the narrowed class would be smaller than her previously proposed class, Chatman offers no indication of the size of the newly-defined class. The only evidence proffered as to numerosity under Chatman's prior definition was that it would likely exceed 100 members. *See* Renewed Motion at 11-12, ECF No. 39 (citing Grover's deposition testimony (Grover dep. at 82) that it was "probably fair" to assume that, during the relevant one year period, GC left at least 100 voice messages for South Carolina residents that did not state that GC was a debt collector or was attempting to collect a debt); *id.* at 2 (arguing that GC's corporate representative conceded the class [as previously defined] would include "at least 100 South Carolina consumers"); *id.* at 17 (arguing proposed class is likely to include more than 100 members).

Chatman offers no evidence as to how many individuals would be covered by her alternative definition, which fails even to identify which of GC's records might be searchable for the listed criteria. Chatman has, consequently, failed to proffer evidence from which the court might find the

14

class sufficiently numerous, particularly under her alternative definition, which is the only definition for which any mechanism for ascertaining the class is proffered. *Supra* Discussion § I.

**Typicality.** Chatman does address typicality in her Supplemental Brief, arguing that the summary judgment finding that she is a consumer resolves concerns with typicality. The first difficulty with this argument is that Chatman's proposed class definition is not limited to consumer debtors such as Chatman. It, instead, covers "all persons," thus encompassing third parties contacted by GC, presumably either in error or for the purpose of seeking location information on the consumer debtor. Chatman's claims are not typical of those available to third parties for a variety of reasons including that a debt collector is prohibited from making certain otherwise-required disclosures to third parties under certain circumstances. *See* 15 U.S.C. § 1692b(2) (imposing restrictions on communications with third parties including prohibiting disclosure that the consumer debtor "owes any debt" or disclosure of the caller's employer unless "expressly requested.").

The second difficulty with Chatman's argument on typicality is that it does not address the alternative definition's limitation to searchable records, which Chatman concedes limits the class to those called on behalf of *some* of GC's clients. *See* Pl. Supp. Br. at 6 n.3, ECF No. 58 (quoted above under discussion of numerosity). Chatman has not shown that she is a member of such a narrowed class, a requirement for her claims to be typical of the claims of members of that class.

The court will assume without deciding that some of these difficulties might be cured. For example, the phrase "all persons" might be replaced with a limitation to consumer debtors. Properly targeted discovery might, similarly, provide evidence as to which of GC's records are searchable and on what basis. It might, likewise, establish that Chatman falls within such a narrowed class. These are, however, matters that should have been explored and resolved prior to pursuit of class certification, and certainly prior to Chatman's submission of her Supplemental Brief, which, as noted

15

above, followed an extended period after initial briefing and ruling on the motion for summary judgment. Under these circumstances, the court will not allow Chatman a further opportunity to redefine the proposed class or conduct further discovery on class certification issues before ruling on the long-standing motion for class certification.

## II.     RULE 23(b)

### A.     Rule 23(b)(3)

Chatman primarily seeks certification under Rule 23(b)(3), which allows certification of a class where the court finds that questions of law or fact common to the class predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The predominance requirement overlaps with the commonality requirement under Rule 23(a), but imposes a more stringent burden. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (noting, in reversing certification of settlement class, that "the predominance criterion [of Rule 23(b)(3)] is far more demanding" than Rule 23(a)'s commonality requirement). Predominance and Superiority considerations also overlap because "[w]here many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young v. Nationwide Mut. Ins. Co.*, 694 F.3d 532, 545 (6th Cir. 2012).

**Some Common Issues.** It is beyond doubt that there are factual and legal issues that would be common to the class. Some of these issues were resolved in Chatman's favor through the Summary Judgment Order. For example, the court found that GC was a third-party debt collector and that GC's written procedures direct its agents, under certain circumstances, not to give otherwise required disclosures when leaving a voicemail message. The court also rejected certain legal arguments that might have provided GC with a defense, most critically that the challenged voicemail messages were not "communications" within the scope of the FDCPA.

16

**All Elements May not be Subject to Common Proof**.  Chatman did not, however, obtain summary judgment based solely on information gleaned from Defendant's records or proof and arguments otherwise available to the class as a whole.  Instead, Chatman's success depended in part on her declaration as to her status as a consumer debtor and the particular content of the messages left on her voicemail.  This suggests similar individualized proof may be required for class members, raising concerns as to predominance and superiority.[12]

GC suggests particular concerns may be raised as to whether putative class members actually received messages that were left on telephone numbers listed for them and whether the messages included the required disclosures.  Whether receipt must be proven is a legal issue on which the parties disagree.[13]  If the legal question is not resolved in favor of the class, individualized proof (presumably based on individual class members' recollection of messages received between February 2013 and February 2014) would be required making it unlikely the matter could be managed as a class action.  Notably, Chatman obtained summary judgment without resolution of this legal question because she relied on her own, uncontroverted declaration regarding receipt of two messages.

---

[12]  Chatman acknowledges the possible need for individualized proof by arguing that "GC is not the only source of . . . information" necessary to determine content of messages and membership in the class.  Instead, she asserts that "consumers may retain voice messages from GC that can be used to substantiate their membership in the proposed class, just as Ms. Chatman did. As well, potential class members can aver that they received a voicemail message from GC devoid of the required disclosures."  Pl. Reply at 5, ECF No. 49.

[13]  The parties take opposing positions on whether consumers seeking relief for violation of Sections 1692d(6) (which addresses the "placement of telephone calls") and 1692e(11) (which addresses disclosures "in all communications") must establish that they received the offending message.  In support of her position, Chatman relies on cases addressing requirements for the content of notices and letters.  Pl. Reply at 9, ECF No. 49 (citing cases holding that sending letter or notice suffices).  GC, in contrast, cites a number of cases requiring receipt of a voicemail or letter in order for it to be considered a communication under the FDCPA.  Def. Supp. Br. at 17, ECF No. 60.

Whether individualized proof is needed as to the content of messages is also an issue Chatman was not required to address in obtaining summary judgment given her reliance on her own declaration as to the content of the messages. Whether required disclosures were provided cannot necessarily be resolved by reviewing notes in GC's STAR system, and certainly not through any automated search, as notes regarding disclosures are not searchable. *See supra* at 11 (discussing Cappelle's declaration). At best, the fact finder might draw an inference that no disclosure was made if there is no notation of a disclosure on a given Account Detail Listing. That inference may, however, require more individualized fact finding given that the written procedure from which the inference would arise directed GC's agents to provide the relevant disclosures in certain circumstances but not in others. For example, disclosures were to be given if the outgoing voicemail message identified the consumer debtor by first and last name or if the number had previously been determined to be the consumer debtor's number. Thus, before an inference could arise that the disclosure was not provided, a fact finder may need to determine what was included on each individual class member's outgoing voicemail message at the time GC's agents left the challenged message and what prior communications had occurred between GC and the consumer debtor. The latter fact may be subject to determination from GC's records, albeit based on an individualized examination of the Account Detail Listing for each class member. The former fact would require an individualized factual determination based on information class members may not readily recall (the content of their outgoing messages on a prior date). *See generally Marcus*, 687 F.3d at 593 (warning against basing class membership simply on putative class member's statement that they satisfy requirements for membership in the class).

Given the FDCPA's restrictions on what information may be given to a third party, it may also be necessary to determine whether the particular number called belonged to a consumer debtor

or a third party. The potentially individualized issues raised by this issue overlap with concerns flowing from Chatman's reliance on two distinct provisions of the FDCPA. As GC notes, while the two provisions have overlapping requirements, they are not identical. *See* Def. Suppl. Resp. at 15-19, ECF No. 60.

To the extent the issues addressed above involve issues of fact, Chatman has not persuaded the court that they can be resolved on a classwide basis, which raises concerns both as to predominance and superiority. To the extent they raise legal questions, the court declines to resolve those questions because they are not the only remaining impediments to class certification and they are not questions as to which Chatman's interests are the same as those of the class given Chatman's prior success on summary judgment without resolving these legal issues. Thus, in light of Chatman's success based on individualized proof, they are not legal issues common to Chatman and the class she seeks to represent.

Balanced against these concerns are the facts that (1) the FDCPA provides for statutory damages and attorney's fees and costs, and (2) claims such as those advanced in this case are relatively simple, quick and inexpensive to pursue on an individual basis. Both considerations counter arguments that class treatment is necessary to ensure meritorious cases are pursued. *See Glover v. Standard Fed. Bank*, 283 F.3d 953, 965–66 (8th Cir. 2002) (noting, in reversing decision to certify class to pursue claims under the Real Estate Settlement Procedures Act (RESPA), that Congress had fostered the "guarantee of legal representation under RESPA on an individual basis by allowing for attorneys fees and costs as part of the prescribed recovery"); *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 404 (N.D. Ill. 2006) (denying certification of class to pursue claims under RESPA and citing *Glover* in stating "Precedent teaches that the availability of statutory

damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits." ).

Numerosity also plays a part in the superiority determination given the imposition of a cap on statutory damages. On the one hand, some minimum number is needed to qualify for class treatment. On the other hand, at a certain point, the number of class members begins to reduce the maximum recovery available to each of them. Any concern with the latter circumstance may be addressed under Rule 23(b)(3) through a class notice that explains both what is available in an individual action and the anticipated maximum individual recovery if the class action is successful. It, nonetheless, remains a consideration that the court may weigh in addressing superiority. *See Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265 (D. Minn. 2001) (finding class members' interest in pursuing individual actions outweighed efficiency of class action where class size would reduce maximum recovery per class member to $25, an amount that was "shockingly low compared to the statutory damages of up to $1,000 that each class member may be eligible to receive in an individual suit."); *Bryant v. Bonded Account Serv./Check Recovery, Inc.*, 208 F.R.D. 251, 261, 265-66 (D. Minn. 2000) (finding maximum potential recovery for each class member "clearly relevant" to Rule 23(b)(3) analysis). Chatman's failure to proffer evidence as to numerosity leaves the court without any factual basis on which to weigh this consideration.

For the reasons set forth above, the court finds that Chatman has failed to establish either that common issues predominate or that a class action is superior to other methods of resolving class members' claims. The court, therefore, denies Chatman's motion to certify a class under Rule

23(b)(3).[14]

B.    **Rule 23(b)(2)**

In the alternative, Chatman seeks certification under Rule 23(b)(2).  In her Renewed Motion, Chatman refers to Rule 23(b)(2) only in a one sentence argument, asserting that certification is appropriate under this subpart "because GC, through its standardized, written debt collection policy, 'has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  Pltf Opening Br. at 27, ECF No. 39 (quoting Fed. R. Civ. P. 23(b)(2).  In her reply, Chatman emphasizes Rule 23(b)(2)'s allowance of "declaratory relief" and cites seven district court decisions that certified Rule 23(b)(2) classes to pursue claims under the FDCPA based on findings that declaratory relief predominated.  *See* Pltf Reply at 13.  Two of these decisions were from within the Fourth Circuit. *See Karnette v. Wolpoff & Abramson, LLP.,* No. CIV.A. 3:06CV44, 2007 WL 922288 at *10 (E.D. Va. Mar 23, 2007) (holding declaratory relief predominated because each class member would receive an equal share of any statutory award); *Woodard v. Online Info. Servs*., 191 F.R.D. 502, 507 (E.D.N.C. 2000) (holding declaratory relief predominated because the amount each class member would receive as a percentage of the maximum statutory damage award was minimal).  In her Supplemental Brief, Chatman refers to Rule 23(b)(2) only in her conclusion, citing to a single recent case which certified a *settlement* class under this rule.  ECF No. 58 at 9 (citing *Rodriquez v. Dynamic Recovery Solutions, LLC*, No. 14-CIV-20933-BLOOM, 2015 WL 178161, at *1 (S.D. Fla Jan 14, 2015) (certifying jointly proposed settlement class under Rule 23(b)(2) where (1) defendant

---

[14]  As with the Rule 23(a) determinations, the court does not suggest that a class could never be certified to pursue the claims at issue here.  It only finds that Chatman has failed to meet her burden of establishing the requirements necessary for certification.

agreed to injunctive relief for alleged FDCPA violations, (2) the maximum statutory damages would be paid as a *cy pres* award, and (3) no release of absent class members' claims would result from the settlement)).

In contrast, two of the cases Chatman cites in favor of certification under Rule 23(b)(3) explicitly reject certification of an FDCPA class under Rule 23(b)(2). Both cases rely on the FDCPA's failure to authorize injunctive relief in claims brought by individuals. *See Drossin v. Nat'l Action Fin. Servs.*, 255 F.R.D. 608, 618 (S.D. Fla. 2009) ("the appropriate relief for an FDCPA action is monetary damages, and a Rule 23(b)(2) action and hybrid class action would be improper"); *Hicks v. Client Servs., Inc.*, No. 07-61822-Civ, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) (same); *see also Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 569 (D. Minn. 2003) (declining to certify class under Rule 23(b)(2) because the FDCPA did not authorize either injunctive or declaratory relief in private actions).[15]

For reasons stated in *Drossin*, *Hicks*, and *Jones*, this court finds that Rule 23(b)(2) does not provide a proper basis for certification of Chatman's proposed class.[16] This is particularly true under the facts of this case because, even if non-monetary relief was available under the statute, it would be of little or no benefit to members of the class whose claims are limited to restrospective rather than prospective relief. Thus, declaratory relief would be useful to them only as a prerequisite to monetary relief. Under these circumstances, even if the monetary relief is minimal, it still

---

[15] In *Jones*, the court also declined to certify the class under Rule 23(b)(3), in part because class members' potential statutory recovery was de minimis as a result of the cap on statutory damages combined with the size of the class. *Id.* at 570 (relying on *Sonmore*, 206 F.R.D. 257 in finding de minimis maximum recovery precluded a finding of superiority);

[16] The court notes but does not reach GC's additional arguments for denial of certification under Rule 23(b)(2). *See* Def. Supp. Br. at 23-25.

22

predominates over any "injunctive relief or *corresponding* declaratory relief." Fed. R. Civ. P. 23(b)(2). *See generally Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 & n. 39 (5th Cir. 2000) (assuming injunctive relief was available under the FDCPA based on defendant's failure to challenge the premise but acknowledging that "courts uniformly hold that the FDCPA does not authorize equitable relief" and "unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion").[17]

Considerations of due process, likewise, disfavor certification under Rule 23(b)(2). As the United States Supreme Court noted in *Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541 (2011), Rule 23(b)(2) "provides no opportunity for . . . class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Id.* at 2558 (relying, in part, on the absence of notice and an opportunity to opt out in rejecting certification of a Rule 23(b)(2) class for pursuit of declaratory relief and backpay).[18] Because of the FDCPA's cap on statutory damage awards in class actions, members of an FDCPA class may receive only a minimal recovery for claims that might

---

[17] Ultimately, the *Bolin* court held that certification under Rule 23(b)(2) was an abuse of discretion, *even if injunctive relief was available*, because "most of the class does not stand to benefit from any injunctive relief" making "monetary relief . . . effectively the sole remedy sought." *Id.* at 978.

[18] The Court noted that "[o]ne possible reading of [Rule 23(b)(2)] is that it applies *only* to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all." *Id.* at 2557 (emphasis in original). The court found it unnecessary to answer this broader question "because . . . at a minimum, claims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule." *Id.* (emphasis in original); *see also id.* (relying on *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994), for proposition Court had previously "expressed serious doubt about whether claims for monetary relief may be certified under" Rule 23(b)(2)).

well entitle them to $1,000 in statutory damages if pursued individually.[19]  If a class is certified under Rule 23(b)(3), class members have the right to notice and an opportunity to opt out, thus preserving their right to pursue the maximum statutory recovery through an individual action.  *See Hernandez v. Midland Credit Mgmt., Inc.,* 236 F.R.D. 406 (N.D. Ill. 2006) (finding cap on statutory damages available to class did not make class action inferior to other mechanisms in light of Rule 23(b)(3)'s procedural protections).  Class members have no such rights or protections under Rule 23(b)(2).  *See Ticor*, 511 U.S. at 121 (expressing concern that it may be unconstitutional to certify a class seeking monetary damages under either Rule 23(b)(1) or (b)(2)); *Palmer v. Stassinos*, 233 F.R.D. 546 (N.D. Calif. 2006) (relying, in part, on *Ticor* in rejecting certification of a Rule 23(b)(2) class to pursue FDCPA claims and also noting that relief sought related solely to past wrongs).  In light of these considerations, the court finds it would be inappropriate to certify the class under Rule 23(b)(2) even if certification under that rule is otherwise permissible.

**Notice of Supplemental Authority.**  Chatman has filed a Notice of Supplemental Authority, alerting the court to *Rhodes v. Olsen Assocs.*, Case No. 1:14-cv-00919-MJW (D. Colo. March 13, 2015), in which the court certified a Rule 23(b)(3) class to pursue claims similar to those advanced in this action.  This court finds *Rhodes* distinguishable in several significant respects.  First, numerosity was clearly satisfied because it was "undisputed that approximately 3350 individuals" received the challenged "Scripted Voicemail."  *Rhodes*, slip. op. at 23.  Second, there was no indication, as there is here, that the fact finder would need to resolve individualized issues in order

---

[19]  As noted above, in *Woodard*, the court found the minimal potential recovery supported certification under Rule 23(b)(2).  *Woodard*, 191 F.R.D. at 507 (noting that the statutory cap on damages was 1% of defendant's net worth of $500,000, which would have to be divided equally among thousands of class members who received an estimated100,000 letters).

to determine whether defendant left the Scripted Voicemail for class members. Third, to the extent *Rhodes* relies on a presumption in favor of class certification, it rests on principles inconsistent with those governing certification in this circuit. *Compare Rhodes*, slip op at 22 (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1988) for proposition "doubts should be resolved in favor of certification"), *with EQT Prods.*, 764 F.3d at 357-58 (discussed *supra* at Standard). Finally, for reasons explained above, this court disagrees with *Rhodes*' conclusion that individual class members lack adequate incentive to bring their own claims. *See supra* at 19-20 (addressing incentive provided by statutory damages and availability of attorney's fees and costs).

## CONCLUSION

For the reasons set forth above, Chatman's motion for class certification is denied. In light of this court's prior ruling on summary judgment, this leaves only issues of damages for resolution in this case. The parties are, therefore, directed to confer and file a status report within ten business days of entry of this order addressing a schedule for further proceedings.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 18, 2015

25